## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____  )
                                   )
GEORGE WINER,                      )
                                   )
         Plaintiff,                )
                                   )
v.                                 )         Civil Action No.: 1:17-cv-11071-RGS
                                   )
MARRIOTT HOTEL SERVICES INC.       )
and TOWNE PARK, LLC,               )
                                   )
         Defendants,               )
                                   )
v.                                 )
                                   )
DTG OPERATIONS, INC.               )
         Third-Party Defendant.    )
_____  )


## MEMORANDUM IN SUPPORT OF MOTION OF
## DEFENDANT TOWNE PARK, LLC FOR SUMMARY JUDGMENT


### I.   Statement of the Case.

In his Amended Complaint, Plaintiff George Winer ("Plaintiff") asserts two counts

against Towne for negligence and "premises liability."  Plaintiff alleges that on May 16,

2014, he caught his foot in a drain hole located in the garage at the Boston Copley Marriott

Hotel ("Garage"), ("Incident").   SMF, ¶ 3.  Plaintiff alleges that "the walkways of said

Garage were unsafe and dangerous as an 8 inch drain that has a cover fitted for it, was left

exposed as a direct result of being removed by the defendants, their agents, servants,

employees [sic] causing an unsafe condition."  SMF, ¶ 2.  Plaintiff alleges that the drain hole

was exposed as the cover was displaced or otherwise not covering the drain.  SMF, ¶ 4.

Plaintiff alleges that the defendants were aware of the unsafe condition, failed to place the

public on notice of the condition and failed to remove or correct the "dangerous" or "faulty" condition.  SMF, ¶ 5.

Plaintiff is a location manager for Third-Party Defendant DTG Operations, Inc.  SMF, ¶ 12.  His time working at the Marriott Copley was dictated by the business needs of DTG. SMF, ¶ 13.  While working in the Garage, Plaintiff would often inspect the spaces leased by DTG.  SMF, ¶ 14.

The day of the Incident was a busy Friday at the Marriott Copley.  SMF, ¶ 15. Plaintiff received a call from a DTG customer service representative, Michael Haghighi, asking for help cleaning, moving and "jockeying" some of the returned rental cars. SMF, ¶ 16.  Plaintiff and Mr. Haghighi walked from the lobby of the Marriott to the "Dollar parking area" of the Garage.  SMF, ¶ 17.  Plaintiff was walking through space number 8 to get to a car parked in space number 9, when he caught his foot in a drain located in space number 8. SMF, ¶ 17 and 25.

Plaintiff did not have any trouble seeing space number 8; there were no obstructions. SMF, ¶ 20  Further, Plaintiff acknowledges that he did not make any observations of the drain at any time prior to the accident.  SMF, ¶ 21.  After the accident, Plaintiff observed that the drain cover was to the side of the drain.  SMF, ¶ 22.

Plaintiff did not see any activity in the Garage and did not see anyone cleaning prior to his fall.  SMF, ¶ 23.   Plaintiff did not feel anything move under his feet when he stepped in the area of the drain and did not hear any noise.  SMF, ¶ 24.

Marriott employees maintain the facilities within the Garage and perform repairs. SMF, ¶ 6.  The Garage is inspected by Marriott quarterly.  SMF, ¶ 26.  Though the drains are specifically included as part of these quarterly inspections, there is a general visual

inspection of the Garage.  SMF, ¶ 27 and 29.  If a deficiency is noted with respect to a drain,

Marriott inspects the drain and makes any needed repairs.  SMF, ¶ 28.  Not all of the work

performed by Marriott employees in the Garage is recorded by Marriott.  SMF, ¶ 30.

Marriott employees have removed drain covers from time to time.  SMF, ¶ 46.

Leaking pipes and clogged drains were a problem within the Garage.  SMF, ¶ 31.  The repair

and replacement of the drain pipes with the Garage is an ongoing project at the Marriott

Copley.  SMF, ¶ .  In some instances, the drains are replaced with the drain pipes.  SMF, ¶

33.  These repairs, performed by Marriott employees, were not always documented or

otherwise recorded in a work order.  SMF, ¶ 32.  Marriott employees also cleaned the drains

within the Garage.  (Deposition of the Plaintiff, Page 35, Lines 6-9).

If necessary, Marriott retains contractors to perform certain maintenance or repair

work. SMF, ¶ 7.  For example, Drain Doctor was called because the drain was backing up.

SMF, ¶ 35.  At times, Drain Doctor comes out to the Marriott Copley to look at the issue

with the drains or pipes to prepare an estimate for the costs of the work they expect to

perform.  SMF, ¶ 36.  They may remove the drain covers to look at the drain or perform their

work.  SMF, ¶ 46.

Towne operates a valet parking service at the Marriott Copley pursuant to a Parking

Services Agreement ("Agreement") with the Owner and Marriott.  SMF, ¶ 8. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ SMF, ¶ 9.  Towne

does not perform any repairs or maintenance in the Garage.  SMF, ¶ 37.  However, Towne

does surface cleaning in some areas of the Garage using a Tomcat.  SMF, ¶ 38.  The Tomcat

is used with a soap and water solution, which is vacuumed up by a squeegee within the

machine.  SMF, ¶ 39.

The liquid vacuumed by the Tomcat is disposed of in a drain by means of a hose.

SMF, ¶ 40.  Towne uses a variety of drains within the Garage to empty the Tomcat.  SMF, ¶

41.   Towne employees often had to find a drain to use that was near to where they were

cleaning and not clogged.  SMF, ¶ 42.  Though Towne may remove a drain cover to empty

the Tomcat, many times, the drain cover is not removed and the water is simply sent through

the hose, through the drain cover, and into the drain.  SMF, ¶ 43.  Further, on the morning of

the alleged incident, Towne did not operate the Tomcat.  SMF, ¶ 44.

## II.   <u>Standard of Review</u>

A "court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The role of summary judgment is "to pierce the pleadings and to

assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick v. Gen.

Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show,

through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine issue of material fact

exists where the evidence with respect to the material fact in dispute "is such that a

reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> If the moving party has

satisfied its burden, the burden shifts to the non-moving party to set forth specific facts

showing that there is a genuine, triable issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324

(1986). The Court must view the entire record in the light most favorable to the non-moving

party and indulge all reasonable inferences in that party's favor. <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### III.   Argument

#### A.   *Plaintiff Has No Reasonable Expectation of Proving Negligence and Premises Liability Against Towne and His Claims Should be Dismissed as a Matter of Law.*

Negligence is established only upon proof of a defendant's breach of a duty of care that resulted in the damages or injuries sustained by the plaintiff.  <u>Jupin v. Kask</u>, 447 Mass 141, 146 (2006).   An owner or possessor of land owes a common law duty of reasonable care to those lawfully on the premises.  <u>Davis v Westwood Group</u>, 420 Mass. 739, 743 (1995).  This duty includes an obligation to maintain the premises in reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner is aware of reasonably should be aware.  <u>Id.</u> at 743.  Plaintiff bears the burden of proving that Towne was negligent and that the alleged its negligence caused the Plaintiff's injuries:

> "By bringing their actions, the plaintiffs assumed the obligation to show that the negligence of the defendant caused their injury.  This was an affirmative burden and could not be left to surmise, conjecture or imagination.  There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts.  While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an <u>act of negligence for which the defendants is responsible than from a cause for which the defendant is not liable.  *If on all the evidence it is just a reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable, then a plaintiff fails to make out his case*</u> (emphasis supplied)."  <u>Alholm v. Town of Wareham</u>, 371 Mass. 621, 626-627 (1976), <u>citing</u> <u>Bigwood v. Boston & N. St. Ry.</u>, 209 Mass 345, 348 (1911).

In this case, Plaintiff has no reasonable expectation of proving negligence on the part of Towne.  Plaintiff has failed to advance any evidence indicating a breach of the duty of reasonable care by Towne.  There is <u>no evidence</u> in the record that Towne Park removed or otherwise failed to replace the drain cover prior to the Plaintiff's alleged incident.  There is <u>no evidence</u> in the record that Towne Park used the subject drain prior the Plaintiff's alleged incident.  Even if it could be shown that Towne cleaned the Garage prior to the Incident, there is no evidence that the cover was removed by Towne during the cleaning process. Towne Park was not responsible to make repairs in, inspect or maintain the Garage. The fact that the drain cover was off is not sufficient to establish negligence on the part of Towne, particularly where the Marriott employees, DTG employees and Marriott subcontractors had equal access to the Garage and, some, actually performed services related to the drain. Employees of Marriott and Towne, and Marriott's contractors all take the drain covers off from time to time.  SMF, ¶ 46.

Further, even if, for the purpose of arguing this motion for summary judgment, it is assumed that Towne had some responsibility for inspecting the Garage, there is no evidence in the record demonstrating, or even suggesting that the drain cover was off and, if so, how the drain cover came off, when the drain cover came off, or the amount of time that the cover was off, such that the condition reasonably should have been known to Towne.  Plaintiff has failed to present any evidence that Towne knew or should have known of the alleged offset drain cover.  Plaintiff admitted that he did not make any observation of the drain cover prior to the Incident.  Marriott has not received any information that drain covers were left off of drains within the Garage.  SMF, ¶ 34.   Furthermore, the only argument that Plaintiff advances is that when he told Towne employees of the Incident, Josh Jones allegedly told

{00419639.DOCX}

him 'Adam *must have* left the cover off after cleaning the garage.[1]'  However, there is no evidence that garage was cleaned that morning (as it typically was not) by Adam or anyone else, and Plaintiff concedes that Mr. Jones did not affirmatively state that Adam actually left the cover off.  Therefore, there is no evidence that the drain cover was actually off just prior to the time the Incident occurred and that it did not come off during the Incident.  Absent such proof, Towne cannot be found negligent.

As the Plaintiff is not able to offer evidence sufficient such that a jury would be warranted in finding that it was more probable that the Plaintiff's injuries were caused by conduct on the part of Towne instead of some other cause for which Towne is not responsible (the conduct of a third party), judgment must enter in favor of Towne and against the Plaintiff.  Enrich v. Windmere Corp., 416 Mass 83, 87 (1993).

### B. *The Doctrine of Res Ipsa Loquitor Does Not Save the Plaintiff's Claims.*

Towne expects that to preserve his claims in the absence of any direct proof of negligence, Plaintiff will invoke the doctrine of res ipsa loquitor, arguing that an inference of negligence on the part of Towne should be drawn from the fact that he caught his foot in a drain hole in the Garage, a secured location in which Towne performed valet services.  The doctrine of res ipsa loquitor only applies when "(1) the instrumentality causing the accident 'was in the sole and exclusive control and management of the defendant;' and (2) the 'accident is the type or kind that would not happen in the ordinary course of things unless there was negligence by the defendant,'" Wilson v. Honeywell, Inc., 409 Mass. 803, 805 (1991), and other responsible causes, including the conduct of the plaintiff, are sufficiently eliminated by the evidence.  See. Restatement (Second) of Torts § 328D(1)(a)(1965).  "The

---

[1] Deposition of the Plaintiff, Page 157, Lines 4-15.  Mr. Jones denied making this statement.

plaintiff is not required to exclude every possible cause of the occurrence…. It is enough

that the evidence makes it *more probable than not that the defendant was negligent*, and that

the negligence was the cause of the injuries about which the plaintiff complaints" (emphasis

supplied). Id. at 807.

As stated above, Plaintiff has not and cannot offer any evidence as to who, how, when

or if the drain cover was moved prior to the alleged accident. Plaintiff has not established

any evidence to demonstrate that the cover was removed by any employee of Towne Park. It

is true that Towne cleans portions of the Garage with a Tomcat and that the water collected

by the Tomcat is emptied with hose into a drain. However, there is no evidence as to the last

time that Towne cleaned the Garage. The Garage was only cleaned with the Tomcat a

couple of times a month. Further, there is no evidence that the last time Towne cleaned the

Garage, the cover was removed from the subject drain in which the Plaintiff claims he fell.

Plaintiff has not established that the Garage was in the sole and exclusive control or

management of Towne. Towne operated a valet parking service. Towne did not perform

any repairs in the garage and did not inspect or maintain the facilities in the Garage.

Employees of Towne performed inspections to ensure that the cars in the Garage were

parked correctly, in an effort to avoid accidents or any damage to vehicles. Towne did not

inspect the Garage for safety issues. Such inspections were not expected of Towne and were

not contemplated by the Parking Services Agreement with Marriott. Under these facts, and

those stated above, a jury would not be warranted in finding that it was more probable that

the Incident arose from the conduct of Towne instead of some other cause for which Towne

is not responsible. There is no evidence to demonstrate a link between any conduct on the

part of Towne and the Plaintiff's alleged injury. "Res ipsa loquitor does not overcome the

lack of evidence of the defendant's negligence."  Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993).

### C. Plaintiff May Not Recover Because the Condition About Which He Complains, to the Extent it Existed, Was Open and Obvious.

It is well established that a landowner's or possessor's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence.  O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000).  They are relieved of the duty to warn of open and obvious dangers on the premises "because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." Id.  Here, if the drain cover was off, it would be blatantly obvious to a person exercising reasonable care while walking through space number 8.

Even if Plaintiff had some evidence that Towne was aware that the drain cover was off, Plaintiff, by his own admission, made no observations of the drain located in space number 8 before he walked towards it.  However, as stated above, there is no evidence that the drain cover was actually off prior to the Incident.

Plaintiff had no trouble seeing in the Garage and the drain hole was not hidden by any obstructions.  Had the Plaintiff exercised reasonable care in proceeding through space number 8 to the car parked in space number 9, he surely would have seen that the drain cover was next to the drain.  A person of ordinary intelligence would have perceived it and avoided it, and, therefore, any further warning would be superfluous.  O'Sullivan at 206 (2000).




### D. As the Record is Void of Any Negligence on the Part of Towne, Marriott's Cross-claims Must Similarly be Dismissed.

Marriott asserted Cross-claims against Towne for contribution, common law indemnification and contractual indemnification.  As the Plaintiff is unable to prove essential elements of his claim, the claims asserted by Marriott, derivative of the Plaintiff's claims against Towne must be dismissed.

Marriott asserts a claim against Towne for contribution pursuant to G.L. c. 231B, alleging that Towne is jointly liable in tort to the Plaintiff.  However, as stated above, Towne does not own the Garage, it does not operate the Garage, it does not maintain the Garage or make repairs in the Garage.  Towne operates a valet parking service at the hotel.  Moreover, there is no evidence that Towne was negligent.  Plaintiff's claim asserts that both defendants were negligent for leaving a drain exposed.  However, as stated above, there is no evidence that the cover was off of the drain prior to the Incident and that it did not come off during the incident, there is no evidence as to who took the cover off, if anyone, how the cover was

---

[2] Marked as Exhibit 1 during the deposition of the Plaintiff, George Winer, and attached to the Appendix filed herewith as Exhibit 1.  Plaintiff testified that this is the "Dollar area."  Page 85.

[3] Marked as Exhibit 2 during the deposition of the Plaintiff, George Winer and attached to the Appendix filed herewith as Exhibit 2.  Plaintiff testified that the scene of the Incident looked like this image, with no car in space number 8 and a car in space number 9.  Page 89.

removed, when the cover was removed, or how long the cover had been off.  Accordingly, there can be no finding of negligence against Towne.  Similarly, Marriott's Cross-claim for common law indemnification, asserting that Marriott is vicariously or derivatively liable for Towne's negligence, must be dismissed.

Lastly, Marriott claims that Towne is liable to Marriott for contractual indemnity, asserting that Towne must defend, indemnify and hold harmless Marriott against the claims of the Plaintiff.  Marriott's claim is without merit. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

Marriott also has a contract with Third-Party Defendant DTG Operations, Inc. for the lease of spaces within the Garage.  The DTG Agreement initially included only six spaces.[4] However, through time, DTG leased additional spaces within the Garage.  According to Marriott, the space in which the Plaintiff fell was leased to DTG and not Towne.  DTG's alleged lease of the subject space forms the basis for its Third-Party Complaint against DTG.

Even if there is or was no agreement between Marriott and DTG with regard to the space in which the Incident allegedly occurred, ████████████████████

██████████████████████████████████████████████

████████.  See Parking Services Agreement, Page 9, Exhibit 7.  Plaintiff has alleged that Marriott negligently failed to keep the premises safe, failed to warn visitors of a dangerous

---

[4] The "DTG Agreement" is filed with Third-Party Defendant DTG Operations, Inc.'s Motion for Summary Judgment (filed under seal pending an Order of this Court.

condition and failed to inspect the Garage for dangerous conditions.  Marriott acknowledged

that it does not frequently inspect the Garage and that Marriott employees are responsible for

the repairs and maintenance of the Garage.  Plaintiff has not offered any evidence, or

otherwise plead any specific grounds to show that Towne is liable to the Plaintiff for the

injuries the Plaintiff claims he sustained or that his injuries arose from Towne's performance

of its valet services.  Accordingly, Towne has no obligation to defend or hold Marriott in this

action.

## IV.    <u>Conclusion</u>

For the aforementioned reasons, Towne respectfully requests that the Court dismiss

all claims, including those asserted by the Plaintiff and Marriott, against Towne, with

prejudice.


Dated:  October 9, 2018

TOWNE PARK, LLC.,
By its attorneys,
MICHIENZIE & SAWIN, LLC

_/s/  Amy Magher_____
Paul Michienzie (BBO #548701)
Amy Magher (BBO #664116)
745 Boylston Street, 5th Floor
Boston, Massachusetts 02116
pm@masatlaw.com
amagher@masatlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Amy Magher, hereby certify that on October 9, 2018 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Amy Magher*
Amy Magher

{00419639.DOCX}